UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDRES ROBLES GONZALEZ, ) | |
| ) | |
|     *Plaintiff,* ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | |
| UNITED STATES OF AMERICA, U.S. ) | CASE NO. _____ |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, IMMIGRATION AND ) | |
| CUSTOMS ENFORCEMENT, THOMAS ) | |
| K. WINKOWSKI, in his Official Capacity ) | |
| as Acting Director of U.S. Immigration ) | |
| and Customs Enforcement, and JEH ) | |
| JOHNSON, in his Official Capacity as ) | |
| Secretary of Homeland Security, ) | |
| ) | |
|     *Defendants.* ) | |

## COMPLAINT

### PRELIMINARY STATEMENT

1.  Plaintiff Andres Robles Gonzales became a Citizen of the United States of America on June 13, 2002. Despite this objectively verifiable fact, the United States government deported him to Mexico on December 31, 2008.

2.  Beginning in October of 2008, law enforcement officers of the U.S. Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE) unlawfully arrested, detained, prosecuted, deported, and prevented the return of Plaintiff based on their groundless belief that plaintiff was a noncitizen subject to removal from the United States.

1

3. As a result of ICE officers' actions, Plaintiff suffered the direct effects of illegal imprisonment and wrongful deportation for nearly three years until September 21, 2011, when Immigrant Judge John A. Duck reopened Plaintiff's removal proceeding, vacated the prior deportation order, and terminated the case on the basis of Plaintiff's U.S. Citizenship.

4. Plaintiff continues to suffer ongoing, concrete harm due to the stigmatization caused by residual misleading and derogatory information concerning Plaintiff's citizenship status that echoes throughout federal agency databases as a result of his wrongful deportation.

5. Without affirmative action by the Department of Homeland Security to search and purge its databases of all remaining derogatory information suggesting Plaintiff is a non-citizen, Plaintiff will continue to suffer the tangible, adverse effects of ICE's unfounded and unlawful determination that he is not a U.S. Citizen.

6. Accordingly, Plaintiff brings this action for damages under the Federal Tort Claims Act (FTCA), and for declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346(b) (FTCA), and 5 U.S.C. § 702 (Administrative Procedure Act).

8. On June 28, 2013, Plaintiff submitted an Administrative Tort Claim to ICE and DHS seeking compensation for, *inter alia*, malicious prosecution by ICE law enforcement officials. Plaintiff's Administrative Tort Claim was timely because he submitted it less than two years after his claim for malicious prosecution arose on September 21, 2011 the date Immigration Judge Duck entered his decision vacating Plaintiff's removal order and terminating

proceedings on the basis of his U.S. Citizenship. DHS and ICE denied Plaintiff's Administrative Tort Claim on November 20, 2013. Plaintiff has therefore exhausted all available administrative remedies and timely filed the instant action.

9. This court has jurisdiction over Plaintiff's APA claim pursuant to 5 U.S.C. §§ 702, *et seq*. The Department of Homeland Security and ICE have taken final agency action contrary to the U.S. Constitution, and in excess of statutory authority, including the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*

10. Venue is proper in this District pursuant to 28 U.S.C. § 1402(b) because Plaintiff resides in Lafourche Parish, Louisiana and because the acts or omissions giving rise to Plaintiff's claim under the FTCA occurred within this judicial District.

## PARTIES

11. Plaintiff Andres Robles Gonzalez is a 24 year-old U.S. Citizen and resident of Thibodeaux, Louisiana.

12. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

13. Defendant U.S. Department of Homeland Security is a federal agency under the Executive Branch of the United States Government and is charged with administering and enforcing the nation's immigration laws.

14. Defendant U.S. Immigration and Customs Enforcement is an investigative agency within DHS and is responsible for enforcing federal immigration laws.

15. Defendant Thomas K. Winkowski is, on information and belief, the Acting Director of ICE. Director Winkowski is responsible for supervising and implementing all ICE policies and programs.

16. Defendant Jeh Johnson is the Secretary of the Department of Homeland Security. ICE, Customs and Border Protection, and USCIS are DHS agency components. As head of DHS, Secretary Johnson has authority over all DHS policies, procedures, and practices related to the agency's immigration enforcement functions.

17. All ICE officers involved in Plaintiff's detention, civil prosecution, and removal (collectively "ICE officers") were at all times relevant to this Complaint employed by DHS, an executive agency of the United States.

18. At all times relevant to this Complaint, ICE officers were acting within the scope and course of their employment with ICE.

19. At all times relevant to this Complaint, ICE officers were acting as investigative or law enforcement officers.

## FACTUAL ALLEGATIONS

**A. Plaintiff Derives U.S. Citizenship in 2002.**

20. Plaintiff was born in Mexico in July of 1989.

21. Plaintiff and his family entered the United States as Lawful Permanent Residents (LPRs, or colloquially, "green card holders") in January of 1996, when Plaintiff was six years old.

22. On or about June 13, 2002, Plaintiff's father, Jose Trinidad Robles Ramirez, became a naturalized Citizen of the United States of America.

23. When his father became a U.S. Citizen, Plaintiff was younger than 18 years old, still an LPR, and permanently residing in Louisiana in his father's legal and physical custody.

24. Plaintiff therefore automatically derived U.S. citizenship on June 13, 2002, pursuant to the Child Citizenship Act of 2000, 8 U.S.C. § 1431.

B. **Alien Registration Numbers and the DHS A-File System**

25.     Absent special circumstances not applicable in this case, noncitizens initially admitted to the United States as lawful permanent residents, including Plaintiff and his parents, are identified by a unique, government-issued 9-digit "A-number."

26.     Each A-number has a corresponding paper file, or "A-file," containing, *inter alia*, documents and records related to the individual's entry and legal status in the United States.

27.     In addition to paper A-files, ICE officers have access to several electronic databases maintained by Department of Homeland Security and other federal agencies.

28.     Using a person's A-number, ICE officers can obtain information that includes the A-numbers of his or her family members, and the current immigration status those family members.

29.     Because Plaintiff obtained his LPR status through his parents, Plaintiff's A-number is associated with his parents' A-numbers in ICE's databases and Plaintiff's A-file.

30.     By using Plaintiff's A-number to locate and review information associated with the A-number of Plaintiff's father, an ICE official could easily verify Plaintiff's father's citizenship status within just a few keystrokes.

C. **ICE Arrests, Detains, Civilly Prosecutes, and Deports Plaintiff in 2008.**

31.     On October 8, 2008, ICE officers working in ICE's New Orleans Field Office drafted and faxed officials at the Lafourche Parish Detention Center (LPDC) a Form I-247, Immigration Detainer notice. The Form I-247 was addressed to officials of the Terrebonne Parish Sheriff's Office. ICE originally issued the I-247 when Plaintiff was in Terrebonne Parish's custody on July 20, 2007.

32. The Immigration Detainer prevented Plaintiff's release from Terrebonne and Lafourche Parish custody and continued his detention at the request of ICE.

33. Notwithstanding the objectively verifiable fact that Plaintiff derived U.S. citizenship in 2002, ICE officers arrested Plaintiff on October 9, 2008, at the Lafourche Parish Detention Center (LPDC) for alleged violations of federal civil immigration laws.

34. When ICE officials encountered and interrogated Plaintiff, he informed them he is a U.S. Citizen and therefore could not be subject to any enforcement action by ICE.

35. Plaintiff explained to the ICE officials that because his father naturalized when he was a minor LPR living in his father's custody, he automatically became a U.S. Citizen.

36. The ICE officials who encountered and interrogated Plaintiff ignored his explanation of his U.S. citizenship and instead insulted him and used profanity toward him.

37. A cursory review of Plaintiff's A-file or the A-files of his parents would demonstrate that Plaintiff derived U.S. citizenship when his father naturalized on June 13, 2002.

38. During subsequent questioning at an ICE office, Plaintiff explained again that he was a U.S. Citizen because his father naturalized several years earlier.

39. In response, the ICE officer who interviewed Plaintiff entered information into a computer. This entry generated a screen containing a photograph of Plaintiff's father and other information appearing to be about his father's immigration status.

40. The ICE officer showed this screen to Plaintiff, who confirmed that the man in the photograph was indeed his father.

41. The ICE officer then went to discuss the case with a supervisor out of earshot from Plaintiff. When the ICE Officer came back, he informed Plaintiff that there was nothing he could do because the supervisor refused to investigate Plaintiff's claim to U.S. Citizenship.

42. As part of the federal law enforcement action ICE officers initiated against Plaintiff, an ICE officer took Plaintiff's sworn statement.

43. Plaintiff initialed and signed this sworn statement under the penalty of perjury and under threat of federal prosecution for giving false statements to a federal official.

44. According to this sworn Affidavit, an ICE officer asked Plaintiff: "Of what country are you a citizen?"

45. Plaintiff responded truthfully: "United States."

46. Nevertheless, on October 9, 2008, after taking Plaintiff's sworn statement, ICE officers issued to Plaintiff a "Notice to Appear" (NTA). The NTA is the charging instrument for the initiation of civil removal proceedings, colloquially called as "deportation proceedings."

47. In the Notice to Appear, ICE officers falsely claimed that Plaintiff was not a citizen of the United States.

48. ICE officers also falsely claimed in the NTA that Plaintiff was subject to deportation from the United States.

49. An ICE supervisor reviewed the NTA and the accompanying evidence, including Plaintiff's sworn statement, for factual and legal sufficiency. This ICE supervisor approved the Notice to Appear and caused it to be filed by ICE with the Immigration Court.

50. In order to prevail in a removal proceeding and deport a person from the United States, ICE bears the initial burden of proving by "clear, unequivocal, and convincing evidence" that the person is not a citizen or national of the United States.

51. ICE officers lack jurisdiction and legal authority to arrest, detain, or deport United States citizens for immigration violations.

52. Consequently, ICE officers executing an NTA charging an individual with deportability from the United States have an affirmative duty to thoroughly investigate all claims to U.S. citizenship prior to initiating removal proceedings against that individual.

53. ICE officers in this case drafted, executed, and filed the NTA notwithstanding Plaintiff's readily verifiable assertion of U.S. citizenship, which Plaintiff made repeatedly, and under penalty of perjury.

54. In addition to the NTA, ICE officers also drafted a Form I-213, Record of Inadmissible or Deportable Alien.

55. The Form I-213 is normally the primary piece of evidence ICE uses against individuals in removal proceedings.

56. The Form I-213 contains fields requiring the interviewing officer to ascertain and document the names, nationalities, and current residences of the subject's parents.

57. The Form I-213 ICE officers created to use as evidence against Plaintiff falsely claims that he "is a Mexican native and citizen who has derived Legal Permanent Resident status in the United States through his parents, whom [sic] are also Legal Permanent Residence [sic], as described in section 204(a)(1)(B) of the [Immigration and Nationality] Act."

58. However, possibly because the data entered into the Form I-213 is auto-completed using a DHS database, the Form I-213 also lists Plaintiff's father's nationality as "United States" – thus indicating Plaintiff's father's status as a U.S. Citizen.

59. ICE officers willfully disregarded Plaintiff's assertions that his father was a naturalized U.S. Citizen, evidence of which ICE's own database may have auto-populated into the Form I-213.

60. As a result of ICE officers' actions, Plaintiff was subject to mandatory, no-bond detention.

61. At his initial hearing before the immigration court in December 2008, Plaintiff appeared *pro se* and informed the immigration judge and DHS counsel that he believed he is a U.S. Citizen.

62. On December 16, 2008, Immigration Judge John Duck sustained ICE's charges of deportability against Plaintiff and ordered him removed to Mexico.

63. ICE executed the removal order by deporting Plaintiff to Mexico on or about December 31, 2008.

## D. Plaintiff Returns to the U.S. After Nearly Three Years of Government-Imposed Exile

64. Upon being banished to a country in which he had not lived since age six, Plaintiff struggled to make contact with his family in the United States.

65. Plaintiff and his family tried unsuccessfully on multiple occasions to convince U.S. government officials in Mexico that he was actually a U.S. Citizen.

66. Due to the unlawful deportation order, Plaintiff was unable to obtain the necessary travel documents to reenter the United States and return to his home and family in Louisiana.

67. The existence of the deportation order against Plaintiff prevented these consular officials from taking action that would have allowed him to return to the United States.

68. To address the impediment the deportation order created, Plaintiff was forced to hire an attorney for the purpose of obtaining a Certificate of Citizenship from USCIS.

69. The citizenship certificate would confirm Plaintiff derived his U.S. citizenship in 2002. This, in turn, would allow Plaintiff to convince consular officials and U.S. border guards that he had the legal right to enter and remain in the United States.

70. USCIS – the federal agency responsible for adjudicating applications for citizenship certificates – acknowledged on June 15, 2011 that Plaintiff derived U.S. Citizenship on June 13, 2002.

71. But in a Kafkaesque turn, USCIS cited the fact that ICE had previously deported Plaintiff, thus rendering him unable to appear at a USCIS office in the United States, as the reason it was unable to complete Plaintiff's application and issue his Certificate of Citizenship.

72. However, using USCIS's written acknowledgement of his derivative U.S. Citizenship, Plaintiff was finally able to reenter the United States in September of 2011.

73. Upon reviewing the USCIS correspondence and concurring that Plaintiff was, in fact, a United States Citizen, ICE reversed its position and effectively conceded its error by joining with Plaintiff's counsel in a motion to the Immigration Judge to reopen Plaintiff's previous deportation case vacate the removal order, and terminate the proceeding.

74. Immigration Judge Duck granted the motion on September 21, 2011. Judge Duck reopened Plaintiff's removal proceeding, vacated the removal order, and terminated the case because Plaintiff is a U.S. Citizen.

E. **Plaintiff's Ongoing, Concrete Harm from ICE's Illegal Actions**

75. Plaintiff is presently suffering concrete, ongoing harm as a result of his illegal deportation by ICE.

76. As a result of derogatory information contained in one or more DHS systems of records suggesting Plaintiff is a non-citizen, he has been unable to register for Selective Service – a legal requirement for men of his age.

77. Plaintiff's inability to register for Selective Service, in turn, has adversely affect his ability to access certain federal benefits to which he is entitled as a U.S. Citizen. Specifically, Plaintiff is unable to submit a Free Application for Federal Student Aid (FAFSA), which would allow him to determine whether he can obtain financial support to further his education and training and enhance his earning capacity.

78. Similarly, Plaintiff has been unable to perform an E-Verify Self-Check to verify that his Social Security number will not be listed as one that requires him to provide additional evidence of identity or proof of immigration status.

79. In an age of interoperability and information sharing, the residual effects of Plaintiff's illegal deportation will continue to resonate throughout DHS databases unless immediate action is taken to search its databases and purge them of any derogatory information indicating he is a noncitizen.

## **CLAIMS FOR RELIEF**

### COUNT ONE
### FEDERAL TORT CLAIMS ACT - MALICIOUS PROSECUTION

80. All previous paragraphs are incorporated as though fully set forth herein.

81. The actions of ICE officers that resulted in the issuance of an Immigration Detainer and Notice to Appear caused the prosecution of civil removal proceedings against Plaintiff without probable cause and with malice.

82. ICE officers commenced a civil immigration removal proceeding against Plaintiff in October 2008.

83. ICE officers caused the civil immigration removal proceeding to commence by creating and signing a Notice to Appear alleging Plaintiff was not a U.S. Citizen and charging him with deportability from the United States.

84. On September 21, 2011, Immigration Judge Duck effectuated a bona fide termination of the immigration removal proceeding in Plaintiff's favor by reopening the proceeding, vacating the removal order, and terminating the proceedings on the ground that Plaintiff is a U.S. Citizen.

85. At the time they initiated the removal proceeding, ICE officers lacked probable cause to believe Plaintiff was a noncitizen due to the objectively verifiable fact that Plaintiff derived U.S. citizenship by operation of the Child Citizenship Act of 2000 when his father naturalized on June 13, 2002.

86. ICE officers acted with malice insomuch as they acted with reckless disregard to Plaintiff's rights as U.S. Citizen not to be detained without bond, subjected to an unlawful deportation proceeding, and banished from the United States. ICE officials' malice is specifically demonstrated by the following actions and omissions:

   a. ICE officials showed Plaintiff a photograph of his father that appeared in the government database that contained all evidence needed to verify Plaintiff's claim to U.S. Citizenship, yet recklessly disregarded this evidence by failing to investigate Plaintiff's citizenship claim.

   b. In response to an ICE official's question, Plaintiff answered under oath and subject to the penalty of perjury that he was a U.S. Citizen, yet ICE officials nevertheless claimed he was a native and citizen of Mexico, in reckless disregard of Plaintiff's rights.

  c. ICE officers had information that would have confirmed this claim of U.S. Citizenship readily available to them, by virtue of Plaintiff's A-number and Plaintiff's biographical information, including the names and A-numbers of his parents. ICE officials recklessly disregarded Plaintiff's rights by failing to conduct even a cursory examination of the records relating to Plaintiff and his parents that would have revealed Plaintiff's father had naturalized in 2002 and that Plaintiff was therefore a U.S. Citizen, as he truthfully testified before ICE officers.

87. ICE officers' failure to take even these cursory investigative steps, which are legally required when a person makes a claim to U.S. Citizenship, is prima facie evidence of their reckless disregard for Plaintiff's rights, and thus, malice.

88. Plaintiff suffered damages, including, but not limited to, emotional distress, loss of enjoyment of life, humiliation, and loss of earnings, as a direct and proximate result of the ICE officers' actions.

89. The United States of America is liable for these damages pursuant to the Federal Tort Claims Act.

## COUNT TWO
## ADMINISTRATIVE PROCEDURE ACT – AGENCY ACTION CONTRARY TO LAW

90. All previous paragraphs are incorporated as though fully set forth herein.

91. The actions of the Defendants DHS, ICE, Winkowski, and Johnson constitute final agency action contrary to law. 5 U.S.C. § 706(2)(A). Specifically, despite the fact that Defendants have agreed to retrospective relief for DHS's illegal deportation of Plaintiff – in the form of joining in a Motion to Vacate Plaintiff's removal order – they have failed to address the need for prospective relief including a search and purge of DHS databases.

92. DHS's actions in arresting, detaining, and deporting Plaintiff were unlawful and violated the Immigration and Nationality Act and the U.S. Constitution.

93. Attendant to DHS's unlawful actions were a series of entries into DHS and other databases erroneously and maliciously claiming Plaintiff was a noncitizen and deportable from the United States.

94. The residual data associated with these entries apparently remains uncorrected within DHS and other agency databases.

95. As a consequence of this residual, erroneous data entered in violation of law, Plaintiff is suffering ongoing, concrete harm, including his inability to comply with federal law by registering for Selective Service, his inability to access FAFSA, and his inability to perform and E-Verify self-check through USCIS.

96. Plaintiff is within the zone of interests the Immigration and Nationality Act sought to protect in limiting the authority of U.S. immigration officials to arrest, detain, and deport noncitizens.

97. No administrative remedy is available to Plaintiff for the violations of his right to be free from the residual effects of his unlawful deportation. In the alternative, any such administrative remedy, if it does exist, would be futile.

98. No other remedy exists at law that would provide Plaintiff the ability to obtain a judicial order for DHS and ICE to search and purge agency databases of derogatory, inaccurate information.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully seeks the following relief:

A. A declaration that Plaintiff was subjected to malicious prosecution in violation of the Federal Tort Claims Act;

B. Nominal and compensatory damages for the injuries Plaintiff has suffered as a result of his malicious prosecution – including, but not limited to, his wrongful deportation and unlawful exclusion from the United States – in the amount of $1,500,000.00;

C. A declaration that Defendants have violated Plaintiff's rights under the Administrative Procedure Act by failing to search DHS databases and correct all derogatory information contained therein as a result of their wrongful deportation of Plaintiff;

D. A permanent injunction requiring Defendants to search all DHS databases and correct all derogatory information pertaining to Plaintiff contained therein as a result of their wrongful deportation of Plaintiff;

E. Reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act; and

F. Such other relief as the Court may deem just and appropriate.

Dated: March 26, 2014                           Respectfully submitted,

**CAZAYOUX EWING, LLC**                         **BARRETT JOHNSTON, LLC**

/s/ Donald J. Cazayoux, Jr.                     /s/ R. Andrew Free
DONALD J. CAZAYOUX, JR. (LBN 20742)             JERRY E. MARTIN
J. LANE EWING, JR. (LBN 29854)                  R. ANDREW FREE
257 Maximilian Street                           217 Second Avenue North
Baton Rouge, Louisiana 70802                    Nashville, Tennessee 37201
Telephone: (225) 650-7400                       Telephone: (615) 244-2202
Fax: (225) 650-7401                             Fax: (615) 244-4345
don@cazayouxewing.com                           jmartin@barrettjohnston.com
lane@cazayouxewing.com                          afree@barrettjohnston.com
                                                *Pro hac vice Applications Forthcoming*