## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANDRES ROBLES GONZALEZ, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | CIVIL ACTION |
| UNITED STATES OF AMERICA, *et al.*, | ) | CASE NO. 14-696-CJB-JCW |
| *Defendants.* | ) | SECTION "J" 2 |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Starting in October 2008, agents of U.S. Immigration and Customs Enforcement (ICE) arrested, detained, prosecuted, and deported Plaintiff Andres Robles Gonzalez. Government agents took these actions despite the objectively verifiable fact that Mr. Robles became a U.S. citizen on June 13, 2002. For almost three years, the U.S. government prevented Mr. Robles from returning to the country he has called home since age 6. As a result, he suffered substantial harm. Mr. Robles, who was only 19 when ICE deported him, endured separation from his mother, father, and sister. He missed the birth of his niece and nephew. He could not further his education or earn wages in the U.S. And he lived every day in fear that he would remain permanently torn from his immediate family.

On September 21, 2011, an immigration judge vacated the deportation order and terminated the removal proceeding on the basis of Plaintiff's U.S. citizenship. But because ICE took no proactive steps to correct the false records its agents created to deport Mr. Robles, he

continues to suffer adverse effects of the unlawful deportation. The residual, false information lingering in federal databases is causing Mr. Robles significant, concrete, and ongoing harm.

Mr. Robles filed his administrative tort claim under the Federal Tort Claims Act (FTCA) on June 28, 2013 – less than two years after his deportation proceeding terminated. ICE denied the administrative claim as time-barred on November 20, 2013. Plaintiff filed this Complaint on March 26, 2014.

Defendants (collectively, "the government") have moved to dismiss, contending this Court lacks subject-matter jurisdiction over both of Plaintiff's claims. First, Defendants posit that Mr. Robles's claim for malicious prosecution under the FTCA is time-barred because he did not submit an administrative tort claim within two years of being unlawfully deported. Second, the government seeks to convert Plaintiff's Administrative Procedure Act (APA) claim to search for and purge the false database information created as a result of ICE's illegal conduct into an unexhausted Privacy Act claim to correct agency records. Because Mr. Robles did not make an administrative Privacy Act request, Defendants urge that this Court lacks subject-matter jurisdiction.

Both contentions are meritless. This Court has subject-matter jurisdiction over Plaintiff's FTCA claim for malicious prosecution because that claim did not accrue until the termination of deportation proceedings in Mr. Robles' favor on September 21, 2011. He submitted an administrative tort claim less than two years later. He therefore complied with the FTCA's time limits, and subject-matter jurisdiction lies.

The government's contention that Plaintiff has not exhausted administrative remedies for his APA claim is unavailing because the APA does not require exhaustion of an administrative remedy that is plainly inadequate or futile. That is the case here. Mr. Robles does not seek

correction of records under the Privacy Act, but rather, the affirmative cessation of ongoing harm caused by unlawful database entries created during his illegal arrest, detention, and deportation by ICE. Because no process currently exists allowing a deported U.S. citizen to require a comprehensive search and deletion of records created by the illegal deportation, Mr. Robles had no administrative remedy to exhaust. Moreover, because the Privacy Act shifts the burden onto Mr. Robles and does not allow him to require DHS to conduct affirmative searches and purge false and malicious law enforcement data, the Act is plainly inadequate as an administrative remedy, and exhaustion would be futile.

Both of the government's challenges to this Court's subject-matter jurisdiction are thus legally baseless, and Defendants' motion should consequently be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Robles became a United States Citizen on June 13, 2002. DE 1, Complaint, ¶ 1. Notwithstanding this objectively verifiable fact, ICE officers unlawfully arrested, detained, prosecuted, and deported him to Mexico in 2008. *Id.* ¶ 2. After spending nearly three years in government-imposed exile, Mr. Robles finally obtained an official government acknowledgement of his U.S. Citizenship in June 2011. *Id.* ¶ 70. On September 21, 2011, an immigration judge reopened Plaintiff's removal proceeding, vacated the removal order, and terminated the case in Plaintiff's favor. *Id.* ¶ 74.

The government's acknowledgement of Plaintiff's citizenship and the termination of removal proceedings against him were not enough to prevent continuing harm wrought by malicious and inaccurate information that remains in government databases. *Id.* ¶¶ 76-78. Mr. Robles is unable to comply with the federal statutory mandate that he register for Selective Service due to the false information in DHS's databases. *Id.* ¶ 76. This, in turn, prevents him

3

from submitting a Free Application for Federal Student Aid (FAFSA) to further his education. Similarly, Mr. Robles is unable to avail himself of the E-Verify Self-Check system to assure that his attempts to gain employment will not be met with "no-match" hits indicating he is unauthorized to work in the U.S. *Id.* ¶ 78. Mr. Robles is thus suffering real, concrete, and immediate harm as a result of the false and malicious information DHS placed into its databases when it illegally deported him in 2008. *Id.* ¶ 79.

## STANDARD OF REVIEW

In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (internal quotation marks omitted). The party asserting jurisdiction bears the burden of proof. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *Benton v. United States,* 960 F.2d 19, 21 (5th Cir. 1992). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference

4

that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

ARGUMENT

**A.     This Court Has Subject-Matter Jurisdiction Over Plaintiff's Malicious Prosecution Claim Because He Presented It To DHS Within Two Years After It Accrued in 2011.**

Subject-matter jurisdiction lies to hear Plaintiff's FTCA claim for malicious prosecution because he presented his administrative tort claim to the government less than two years after the immigration judge terminated deportation proceedings in his favor. In order to avail himself of the FTCA's limited waiver of sovereign immunity, a plaintiff must present his claim "in writing to the appropriate Federal agency within two years after such claim accrues[.]" *See* 28 U.S.C. § 2401(b). A malicious prosecution claim cannot accrue until the underlying proceeding terminates in the claimant's favor. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) (citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor[.]")). *See also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (distinguishing delayed accrual of malicious prosecution claims from immediate accrual of false arrest and imprisonment claims).

*Ramming* controls, and it is fatal to Defendants' position. In *Ramming*, the Fifth Circuit addressed the issue of whether the plaintiff's claim was time-barred for failure to comply with the FTCA's two-year administrative presentment requirement. Mr. Ramming was acquitted of federal criminal charges on January 12, 1996 as a result of repeated prosecutorial misconduct. 281 F.3d at 160. He first presented his administrative tort claim for malicious prosecution on

March 18, 1999 – more than two years after acquittal. *Id.* The United States moved to dismiss his complaint for lack of subject-matter jurisdiction. *Id.*

Mr. Ramming argued that his administrative tort claim was timely because his cause of action for malicious prosecution did not accrue until "December 1998, when one of his acquitted co-defendants discovered the contents of the grand jury transcripts" that led to the indictment. *Id.* at 162. The Fifth Circuit rejected this argument because the criminal court judge's "unequivocal iteration of examples of prosecutorial misconduct" at the time of Ramming's acquittal placed him on notice of sufficient facts necessary to conclude a malicious prosecution claim might exist. *Id.* at 163. *Ramming* set the accrual date for the plaintiff's malicious prosecution claim at January 12, 1996 – the date the criminal proceeding terminated in his favor. *Id.* His FTCA action was therefore time-barred because he failed to file an administrative claim within two years of acquittal. *Id.*

Here, as in *Ramming*, Mr. Robles's malicious prosecution claim accrued when the underlying proceeding terminated in his favor. *Id.* at 162. *See also Heck,* 512 U.S. at 489; *Wallace*, 549 U.S. at 393. Louisiana tort law governs Plaintiff's claim for malicious prosecution because "[t]he FTCA applies state law to determine the government's liability for torts within the FTCA waiver of sovereign immunity." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999). *See also* 28 U.S.C. §§ 1346(b), 2674. The elements of Louisiana's malicious prosecution tort are: (1) commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against the plaintiff in the original proceeding; (3) **its bona fide termination in favor of the present plaintiff**; (4) absence of probable cause; (5) the presence of malice therein; and (5) damages. *Jones v. Soileau*, 440 So.2d 1268, 1271 (La. 1984) (emphasis added). *See also Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2000)

(enumerating the elements of Louisiana's malicious prosecution tort in the context of a § 1983 case).

For well over a century, bona fide termination of the underlying proceeding in the plaintiff's favor has been an essential factual element of the prima facie case for malicious prosecution in Louisiana tort law. *See, e.g.*, *Davis v. Stuart*, 16 So. 871, 872 (1895) ("[I]t is well settled that a person cannot sustain an action for damages caused by a suit against him until after a legal termination of that suit in his favor."); *see also Carnes v. Atkins Bros. Co.*, 48 So. 572, 574 (1909). Until such a termination occurs, the plaintiff has no malicious prosecution claim.

In this case, Plaintiff's malicious prosecution claim accrued on September 21, 2011. That is when Immigration Judge Duck granted Plaintiff and DHS's joint motion to reopen, vacated the deportation order, and terminated the proceedings in Plaintiff's favor. DE 1, ¶ 3. Mr. Robles presented his administrative tort claim to DHS on June 28, 2013 – less than two years after the malicious prosecution claim accrued. DE 1, ¶ 8. Because Plaintiff satisfied the FTCA's two-year limitations period for presenting his administrative tort claim for malicious prosecution, this Court has subject-matter jurisdiction to adjudicate that claim.

The government says otherwise. It contends "December 31, 2008 is the date Plaintiff's FTCA claims [sic] accrued," and because Plaintiff did not present his administrative claim to the agency before December 31, 2010, this Court allegedly lacks subject-matter jurisdiction. Memo. in Supp. of Mot. to Dismiss for Lack of Subject-Matter Jurisdiction. DE 18-2 at 4. The government sets the accrual date in December of 2008 because that is when it claims Mr. Robles "both knew of his injury and knew of the connection between the injury and the allegedly unlawful actions of the federal employees." *Id.* (citing *Brown*, 188 F.3d at 589-90 and *Bush v.*

*United States*, 823 F.2d 909, 911 (5th Cir. 1987)). The government is incorrect as a matter of law, and its reliance on *Brown* and *Bush* in support of this proposition is misplaced.

The Fifth Circuit in *Brown* affirmed the district court's dismissal of FTCA claims by several Houston businessmen who were acquitted of criminal wrongdoing in May 1994 after becoming ensnared in a multiyear FBI sting operation that began in 1991. 188 F.3d at 583-85. On January 6, 1996, the plaintiffs presented their administrative tort claims. *Id.* at 585. They alleged "[1] abuse of process, [2] malicious prosecution, [3] assault, [4] intentional infliction of emotional distress, [5] false imprisonment, and [6] invasion of privacy." *Id.* Claims [3] – [6] rested on allegations about events that occurred in August and September of 1993. *Id.* at 590. Because these claims accrued more than two years before the businessmen presented their administrative tort claim, the *Brown* court affirmed the district court's dismissal of these claims as time-barred. *Id.* However, both the district court and the Fifth Circuit reached the merits of the plaintiffs' malicious prosecution claims. *Id.* at 586-87.

The only legally relevant distinction between the businessmen's four time-barred claims and their timely claim for malicious prosecution is the difference in accrual dates. The *Brown* plaintiffs' acquittal in May 1994 marked the accrual date of their claims for malicious prosecution. *See Ramming*, 281 F.3d at 162. On the other hand, claims [3] – [6] accrued in August and September of 1993 – when the underlying events took place. This explains why the *Brown* court reached the merits of the malicious prosecution and abuse of process claims while affirming the dismissal of the other four claims for lack of subject-matter jurisdiction. 188 F.3d at 583-87, 589-90.

*Brown* therefore offers no support for Defendant's suggestion that Plaintiff's malicious prosecution claim accrued when DHS deported him on December 31, 2008. To the contrary,

*Brown*, like *Ramming*, demonstrates that Plaintiff's malicious prosecution claim accrued on the date his deportation proceeding terminated in September of 2011.

The remaining authority the government offers is inapposite because none of these cases involved claims for malicious prosecution. *See* DE 18-2 at 4 (citing *Bush v. United States*, 823 F.2d 909 (5th Cir. 1987) (*pro se* claim for "permanent injury resulting from [the government's] failure to release records"); DE 18-2 at 5 (citing *Ortega v. United States*, 547 Fed. App'x 384 (5th Cir. 2013) (per curiam) (unpublished) and *Salas v. United States*, 527 Fed. App'x 813 (10th Cir. 2013) (involving only claims for negligent infliction of emotional distress)).

To bolster its assertion that Plaintiff's malicious prosecution claim accrued when DHS unlawfully deported him in December 2008, the government relies on *Ortega*, where, it claims, "the Fifth Circuit ruled on this exact issue." DE 18-2 at 4. The Government is mistaken. The plaintiffs in *Ortega* did not bring an FTCA claim for malicious prosecution, so the Fifth Circuit never addressed when such a claim accrued. *See* Order Granting Mot. to Dismiss and Denying Mot. for Ext. of Time to Serve ("Order"), *Ortega v. United States*, No. 3:11-cv-00401-FM, DE 41 at 2 (W.D. Tex. May 24, 2012) ("Plaintiffs' Amended Complaint brings a false imprisonment claim, a negligence claim, an intentional infliction of emotional distress claim, and a fraud and fraudulent concealment claim, all against the United States of America under the FTCA.") (copy attached).

Unlike Plaintiff Robles, Mr. Ortega was a temporary resident who was never placed into deportation proceedings or deported subject to civil process. 547 Fed. App'x at 385-86. Mr. Ortega and his family consequently had no colorable malicious prosecution claim. Indeed, the district court in *Ortega* distinguished the plaintiffs' time-barred tort claims from those at issue in *Ramming* precisely because the Ortegas did not allege malicious prosecution. *See* Order at 9

(citing *Ramming*, 281 F.3d at 162), *aff'd, Ortega*, 547 Fed. App'x 384. The government's contention that the Fifth Circuit in *Ortega* "ruled on this exact issue" is simply false.

*Ramming*, *Brown*, and *Ortega* lay bare the indefensibility of the government's position, but common sense does too. If the government were correct that Plaintiff's claim for malicious prosecution accrued when DHS unlawfully deported him on December 31, 2008, Mr. Robles would have had to file his administrative tort claim for malicious prosecution nine months **before** his deportation order was vacated, **before** the removal proceeding terminated in his favor, and thus, **before** he actually had a cause of action for malicious prosecution under Louisiana law. *See Jones*, 440 So.2d at 1271; *Carnes*, 42 So. at 574; *Davis*, 16 So. at 872. Accepting Defendant's asserted accrual date would yield patently absurd results.

*Heck v. Humphrey* forecloses such absurdity. 512 U.S. 477. In *Heck*, the Supreme Court reviewed a § 1983 action challenging the constitutionality of a conviction and sentence that was not previously vacated by any judicial order. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486-87 (footnote omitted). Thus, under *Heck*, "where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence." *Id.*

While *Heck* was a Section 1983 case, the Fifth Circuit has incorporated its logic into claims for malicious prosecution under the FTCA. *See Ramming*, 281 F.3d at 162. The government's proffered accrual date of December 31, 2008 would require Mr. Robles to have collaterally attacked his deportation proceeding. *Heck* and *Ramming* clearly prohibit such a collateral attack.

In sum, subject-matter jurisdiction lies to adjudicate Plaintiff's FTCA claim for malicious prosecution. The claim did not accrue until the immigration judge vacated the removal order and terminated the deportation proceeding in Plaintiff's favor on September 21, 2011. Mr. Robles presented his administrative tort claim less than two years later on June 28, 2013. He therefore complied with the FTCA's two-year administrative presentment requirement, and can avail himself of the FTCA's limited waiver of sovereign immunity. The government's motion to dismiss Count One should be denied.

**B.     Subject-Matter Jurisdiction Lies to Hear Plaintiff's APA Claim Because No Adequate Administrative Remedy Exists, And Because Exhaustion Would Be Futile.**

This Court has subject-matter jurisdiction to adjudicate Plaintiff's claim for injunctive relief under the Administrative Procedure Act because no adequate administrative remedy exists, and thus, no administrative exhaustion was required. Alternatively, Plaintiff was not required to administratively exhaust his APA claim because administrative exhaustion would be futile.

Just as the government sought to muddy the legal distinction between claims for malicious prosecution and those for false arrest and imprisonment, *supra*, it attempts to miscast Count Two of Plaintiff's complaint as an unexhausted Privacy Act claim. It is not. Rather, it is an action under the APA to enjoin DHS from continuing to maintain false information in its databases about Mr. Robles arising out of its final agency action – the unlawful deportation. Because the government focuses on the wrong agency action, it applies the wrong legal standard.

Applying the correct analysis, Plaintiff was not required to exhaust. As such, this Court has jurisdiction.

The APA waives sovereign immunity, 5 U.S.C. § 702, and empowers federal courts to review final agency action. 5 U.S.C. § 704. In general, a "final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship." *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (citing *U.S. Dep't of Justice v. Federal Labor Relations Authority*, 727 F.2d 481, 493 (5th Cir. 1984)). The APA's scope of judicial review includes the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA also enables courts to hold unlawful and enjoin agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), (2)(C).

Although exhaustion of administrative remedies is generally a jurisdictional prerequisite to an APA action, where no statutory exhaustion requirement exists, federal courts may not judicially impose administrative exhaustion on APA claimants. *Darby v. Cisneros*, 509 U.S. 137 (1993). Even where administrative exhaustion is required, several well-established exceptions may apply. For instance, administrative remedies that are "plainly inadequate" need not be exhausted. *See, e.g.*, *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 176 (5th Cir. 2012). An administrative remedy is "plainly inadequate" where "no administrative remedy is available," or where "the available remedy will not give relief commensurate with the claim[.]" *Mercy Hospital of Laredo v. Heckler*, 777 F.2d 1028, 1033 (5th Cir. 1985) (internal quotation marks omitted). Similarly, where exhaustion of administrative remedies would be futile, plaintiffs are not required to go "tilting at administrative windmills" before seeking judicial relief. *Howard v. Ashcroft*, 248 F.Supp.2d 518, 533 (M.D. La. 2003). An administrative remedy is futile where the

agency has no power to award the claimant the relief she seeks. *McCarthy v. Madigan*, 503 U.S. 140, 149-50 (1992). Likewise, futility is established when it is clear that the claim will be rejected as a result of governing law. *Mercy Hospital of Laredo*, 777 F.2d at 1034 (quotation omitted).

The final agency action for which Plaintiff seeks review is DHS's unlawful detention, prosecution, and deportation of Mr. Robles between October 2008 and December 2008. This action marks the point at which Mr. Robles was "denied a right." *Veldhoen*, 35 F.3d at 255. It is also when ICE agents falsely and maliciously created paper and electronic records alleging Mr. Robles was a non-citizen subject to mandatory detention and deportation.

Though DHS belatedly allowed Mr. Robles back into the United States after a nearly three-year battle, the Department and its agency components have never taken affirmative steps to search for and remove the lingering taint of its unlawful actions from the agency's databases.[1] That is the remedy Plaintiff seeks in this case, and contrary to the government's suggestion, there is no adequate administrative mechanism that can provide it.

The government urges that Plaintiff's APA claim to search and purge is really one under the Privacy Act to correct agency records. DE 18-2 at 5-7. The Privacy Act and DHS's implementing regulations are plainly inadequate for several reasons. First, the Act and 6 C.F.R. § 5.26 impose affirmative obligations on Mr. Robles to contact each of the DHS agency components that could potentially have adverse information about him. 6 C.F.R. § 5.26(a). Second, the regulations require Mr. Robles – rather than DHS agency components – to "identify

---

[1] In this respect, the Declaration of Brian Acuna is particularly telling. *See* DE 18-3. Instead of noting that Mr. Robles became a U.S. Citizen in 2002 – thus implicitly acknowledging the illegality of his arrest, detention, and deportation by ICE in 2008 – ICE's designated official has elected to note only that Mr. Robles was granted a certificate of citizenship in 2011. *Id.* ¶ 5. As the Acuna Declaration demonstrates, DHS has still not conducted a full search or purged the malicious and false records created by ICE during Plaintiff's deportation.

each particular record in question." *Id.* These provisions contain no requirement that the agency first perform the search – the relief Mr. Robles seeks in this lawsuit. Instead, they shift the burden to Mr. Robles to divine which records exist that are causing false-negatives in federal databases accessed by the Selective Service and E-Verify. Third, and perhaps most important, the Privacy Act and DHS's implementing regulations empower agency components to refuse to correct records – including so-called "law enforcement records." *See* 6 C.F.R. § 5.26(f); 5 U.S.C. §§ 552a(j)(2) and (k)(2). Under these provisions, the Privacy Act prohibits Mr. Robles from forcing the agency to correct the false and malicious information in DHS's law enforcement databases, thus rendering that administrative remedy futile.

The relief Mr. Robles seeks is not unprecedented. Earlier this year, a federal district judge in the Northern District of California concluded that a foreign national whom DHS and other government agencies wrongly placed on a terrorirst watchlist was entitled to search-and-purge relief. *See Ibrahim v. Dep't of Homeland Security*, No. 06-00545-WHA, DE 682, Findings of Fact and Conclusions of Law at 38 (N.D. Cal. Jan. 15, 2014) (unsealed Apr. 15, 2014) (ordering that "[t]he government shall search and trace all of its terrorist watchlists and records . . . and the no-fly and selectee lists for entries identifying Dr. Ibrahim. The government shall remove all references to the mistaken designations by Agent Kelley in 2004 and/or add a correction in the same paragraph that said designations were erroneous and should not be relief upon for any purpose.") (copy attached). Mr. Robles seeks a similar make-whole remedy for DHS misconduct.

Mr. Robles is seeking to put an end to the ongoing effects of his illegal arrest, detention, prosecution, and deportation by DHS officials. It was the United States government that broke the law by deporting one of its own citizens. The effects of that illegality remain in the data contained in DHS's records systems. There is no adequate, non-futile administrative remedy that

14

would allow Mr. Robles to right this wrong. Accordingly, this Court has subject-matter jurisdiction to compel DHS to search its systems and purge the false and malicious data.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction should be DENIED.

Date:   August 4, 2014                                                  Respectfully submitted,

/s/ R. Andrew Free
**JERRY A. MARTIN (TBN 20193)***           **DONALD J. CAZAYOUX, JR. (LBN**
**R. ANDREW FREE (TBN 30513)***              **20742)**
BARRETT, JOHNSTON, MARTIN & GARRISON,        **J. LANE EWING, JR. (LBN 29854)**
LLC                                          Cazayoux Ewing, LLC
Bank of America Plaza                        257 Maximilian Street
414 Union Street, Suite 900                  Baton Rouge, LA 70802
Nashville, TN 37219                          Telephone: (225) 650-7400
Telephone: (615) 244-2202                    Facsimile: (225) 650-7401
Facsimile (615) 244-4345                     E-mail: don@cazayouxewing.com
Email: Afree@BarrettJohnston.com             E-mail: lane@cazayouxewing.com
*Admitted Pro Hac Vice*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's *Response and Memorandum in Opposition to Defendants' Motion to Dismiss* was filed electronically with the Clerk of Court using the CM/ECF system that will send notice to all counsel of record.

Date: August 4, 2014.                               By:

                                                    /s/ R. Andrew Free
                                                    R. Andrew Free (TBN 30513)