## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANDRES ROBLES GONZALEZ, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | CASE NO. 14-696-CJB-JCW |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | SECTION "J" 2 |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Andres Robles Gonzalez ("Mr. Robles"), a citizen of the United States since 2002, was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers in 2008 and removed to Mexico on December 31, 2008 on the false basis that he was in this country illegally. On at least eight separate occasions prior to his removal, Mr. Robles informed ICE and other government officials of the objectively verifiable fact that he was a U.S. citizen. ICE officials repeatedly ignored Mr. Robles in direct violation of ICE's own binding policies and procedures. Mr. Robles's banishment by the United States government at age 19 subjected him to several years of extremely precarious living in an area of Mexico gripped by grisly cartel violence. He was separated from his closest family and friends.

Once the United States finally admitted its mistake and acknowledged Mr. Robles's U.S. citizenship nearly three years after ICE arrested him, the government allowed Mr. Robles back into his country with a U.S. passport document. No sooner had he returned than ICE again

unlawfully detained Mr. Robles with yet another immigration detainer. In all, Mr. Robles's Kafkaesque ordeal spanned 1055 days, robbing him of some of the prime years of his life.

Now the United States, through its Motion for Summary Judgment, seeks to escape liability by painting, at best, an incomplete picture of the acts and circumstances surrounding Mr. Robles' wrongful detention and removal from the United States. Summary judgment on liability is inappropriate because nothing that transpired during his December 2008 immigration court hearings prevents Mr. Robles from proving all the elements of his malicious prosecution claim—including bona fide termination of the removal proceeding in his favor, and the absence of probable cause to commence that proceeding. Partial summary judgment cutting off the damages Mr. Robles may recover is similarly unjustified because the record supports neither reducing his recovery based on comparative fault nor limiting it based on a superseding intervening cause.

For almost four years, the United States denied Mr. Robles the full freedoms, protections, and opportunities to which he is entitled as a United States citizen. His right to a trial should not be denied as well.

## FACTS

The United States government banished Mr. Robles to Mexico on December 31, 2008, notwithstanding the objectively verifiable fact that he became a U.S. Citizen on June 13, 2002.[1] Under the Child Citizenship Act of 2000, children born outside the United States automatically become U.S. Citizens when all of the following three conditions have been fulfilled: (1) at least one of the child's parents becomes a U.S. Citizen, either by birth or naturalization; (2) the child is under 18 years of age; and (3) the child resides in the United

---

[1] Complaint, Rec. Doc 1, ¶ 1; Answer, Rec. Doc. 25, ¶ 1.
[2] 8 U.S.C. §§ 1431(a)(1)-(3).
[3] Rec. Doc. 1, ¶ 24; Rec. Doc. 25, ¶ 24.
[4] Ex. A, Robles Dep. 45:13-46:14; 51:22-52:17.
[5] Ex. B, ICE Detainer; Ex. C, Rackley Dep. 30:1-22.
[6] Ex. D, Acuña 30(b)(6) Dep. 75:12-76:3.

States in the legal and physical custody of his or her U.S. Citizen parent following lawful admission for permanent residence.[2] Because Mr. Robles entered as a lawful permanent resident (LPR) in 1996, lived in the legal and physical custody of his father, and was under 18 when his father naturalized on June 13, 2002, he automatically derived U.S. citizenship by operation of law at age 12 pursuant to the Child Citizenship Act on June 13, 2002.[3]

From his very first contact with ICE in July 2007 up to and including his final hearing in Immigration Court on December 16, 2008, Mr. Robles repeatedly and unequivocally maintained that he was a U.S. citizen. He first told ICE agents he was a U.S. Citizen during an ICE Criminal Alien Program interview at the Terrebonne Parish Jail in July of 2007.[4] ICE nevertheless lodged an immigration detainer against Mr. Robles on July 26, 2007.[5] There is no record indicating the ICE official who lodged the detainer in 2007 ever performed any database checks or records checks regarding Mr. Robles's immigration status or claim to U.S. citizenship.[6]

Mr. Robles next informed the government he was a U.S. citizen on October 9, 2008, when Immigration Enforcement Agent (IEA) Timothy Shane Grice arrested him without a warrant at the Lafourche Parish Detention Center.[7] After IEA Grice transported Mr. Robles to ICE's New Orleans office for immigration processing, Mr. Robles repeated his claim to U.S. Citizenship based on his father's U.S. naturalization in 2002.[8] IEA Grice placed Mr. Robles under oath and administered a Sworn Statement in which Robles again claimed that

---

[2] 8 U.S.C. §§ 1431(a)(1)-(3).
[3] Rec. Doc. 1, ¶ 24; Rec. Doc. 25, ¶ 24.
[4] Ex. A, Robles Dep. 45:13-46:14; 51:22-52:17.
[5] Ex. B, ICE Detainer; Ex. C, Rackley Dep. 30:1-22.
[6] Ex. D, Acuña 30(b)(6) Dep. 75:12-76:3.
[7] Ex. E, Robles Dep. 64:13-67:14.
[8] Ex. F. Robles Dep. 71:1-10.

he was a citizen of the United States—this time under penalty of perjury.[9] In addition to the Sworn Statement, IEA Grice created at least three other official government records listing Mr. Robles's citizenship as "United States."[10]

When IEA Grice arrested and interviewed Mr. Robles, binding agency policy required ICE officers to take several actions upon being presented with a claim to U.S. citizenship.[11] These actions include: (1) immediately notifying ICE's chain of command that a person has made a claim to U.S. citizenship; (2) having a Supervisory Immigration Enforcement Agent administer a sworn statement to the person making the claim; (3) asking all questions required by the Form I-213, Record of Inadmissible/Deportable Alien, during the Sworn Statement; (4) asking questions to elicit all information that would be probative to the person's citizenship claim during the Sworn Statement; (5) conducting vital records searches; (6) interviewing family members; (7) notifying the ICE Field Office Director that a person has made a U.S. citizenship claim; (8) communicating between ICE Headquarters and the Field Office Director about the U.S. citizenship claim; and (9) having the Field Office Director ensure that all claims to U.S. citizenship are appropriately reported and investigated.[12]

The ICE agents who arrested and processed Mr. Robles for deportation on October

---

[9] Ex. G, Sworn Statement; Ex. H, Grice Dep. 178:18-179:9.

[10] Ex. I, I-94 Identification Card; Ex. J, Grice Dep. 155:20-25 158:9-10; 160:2-6 (referring to the Oct. 9, 2008 I-94 Identification Card); Ex. K, TECS Report; Ex. L Grice Dep. 166:2-17 and 168:7-13 (referring to the Nov. 3. 2008 TECS report); Ex. M, IAFIS Fingerprint Card; Ex. N, Grice Dep. 169:13-170:14 (referring to the Oct. 9, 2008 IAFIS fingerprint card).

[11] Ex. O, Jul. 18, 2008 Hayes Memorandum re: "Superseding Guidance on Reporting and Investigation of Claims to United States Citizenship." ("Hayes Memo"); Ex. P, Acuña 30(b)(6) Dep. 92:6-19 (discussing the Hayes Memo).

[12] Ex. O.

9, 2008 admit that he made a claim to U.S. Citizenship.[13] They also admit that ICE took none of the steps required by ICE's binding agency policy to report and investigate Mr. Robles's U.S. citizenship claim.[14] Rather than following ICE's binding policy designed to prevent the wrongful detention and deportation of United States citizens, IEA Grice and his supervisor commenced civil deportation proceedings against Mr. Robles—a self-proclaimed U.S. citizen—and subjected him to mandatory, no-bond detention.[15]

Mr. Robles continued to assert his U.S. citizenship while ICE detained him for the next two and a half months.[16] First, when ICE transferred Mr. Robles to the Orleans Parish Prison on October 9, 2008, he informed a female guard that he wished to file a written grievance involving his detention because he was a U.S. citizen.[17] Next, after ICE transferred him from Orleans Parish to a privately run detention facility in Jena, Louisiana, Mr. Robles told a male booking officer there that he was a U.S. Citizen.[18] The booking officer informed Mr. Robles he could submit a written grievance,[19] so he did, informing ICE that he believed he was a U.S. citizen based on his father's 2002 naturalization.[20] In

---

[13] Ex. Q, Grice Dep. 199:22-200:3; Ex. R, McNeil Dep. 180:19-22.

[14] Ex. S, Grice Dep. 225:19 (no notification to chain of command that Mr. Robles claimed to be a U.S. citizen); 225:20-226:16 (Supervisory Immigration Enforcement Agent did not administer the Sworn Statement); 226:17-20 (all the questions in the I-213 were not asked in the Sworn Statement); 226:21-227:2 (no questions probative of claim to USC in Sworn Statement); 227:3-9 (no vital records searches conducted); 227:10-13 (no interview with family members); 227:18-23 (no documentation of notification to the Field Office Director that Mr. Robles made a claim to USC). Ex. T. McNeil Dep. 207:21-208:4 (no communication with or notification up the chain of command); 208:9-17 (no notification by the FOD to DRO headquarters).

[15] Ex. U, Acuña 30(b)(6) Dep. 73:10-14; 91:8-92:1.

[16] Ex. V, Robles. Dep. 96:10-14; 103:4-106:11; 107:15-25; 118:9-119:15.

[17] Ex. V, Robles Dep. 96:10-97:21.

[18] Ex. V, Robles Dep. 103:4-8; 104:24-105:1.

[19] Ex. V, Robles Dep. 105:22-24.

[20] Ex. V, Robles Dep. 105:22-108:9.

response, Mr. Robles received a handwritten note instructing him to wait until court.[21] He also informed at least one other employee of the immigration detention center prior to his immigration court hearing that he was a U.S. citizen.[22]

Mr. Robles attempted to present his U.S. citizenship claim to the immigration judge before the judge entered a deportation order against him on December 16, 2008.[23] Mr. Robles's efforts were not recorded because "the judge said we're going off the record, to turn everything off when he started to talk."[24] Mr. Robles told the immigration judge that he was a U.S. citizen, prompting the judge to ask Mr. Robles's prior counsel if she had any proof of his claim.[25] This attorney never spoke to Mr. Robles about his immigration case before or after his final immigration court hearing.[26] As Mr. Robles "was trying to interrupt and tell them about [his] situation," he was admonished to be quiet or he would be held in contempt of court.[27] Mr. Robles continued trying to speak up and substantiate his U.S. citizenship claim, so officials removed him from the courtroom.[28]

After a conversation between the immigration judge and Mr. Robles's prior counsel, Mr. Robles was ordered back inside the courtroom and informed he would be deported.[29] Even as the immigration judge went on the record to enter a removal order against him, Mr. Robles tried raising his hand to object. But the immigration judge made a hand gesture,

---

[21] Ex. V, Robles Dep. 108:23-25.
[22] Ex. V, Robles Dep. 118:9-119:19.
[23] Ex. W, Robles Dep. 158:18-19.
[24] Ex. W, Robles Dep. 157:2-4.
[25] Ex. W, Robles Dep. 158:18-19.
[26] Ex. W, Robles Dep. 159:8-18.
[27] Ex. W, Robles Dep. 153:13-17; 159:5-7.
[28] Ex. W, Robles Dep. 155:111-17. ("And at the same time I was trying to speak up and they kept telling me don't speak or I'm going to get contempt of court. And I tried to speak up again at the same time they was running my status, talking about my status and they took me out of the court.").
[29] Ex. W, Robles Dep. 155:18-22.

"shushing" Mr. Robles, and indicating he could not say or do anything else.[30]

On December 31, 2008, ICE executed the removal order against Mr. Robles.[31] After nearly three torturous years hiding from grisly cartel violence and witnessing horrific atrocities in Mexico, Mr. Robles finally obtained documentary proof that he is a U.S. citizen from United States Citizenship and Immigration Services ("USCIS") on June 15, 2011.[32] But almost immediately after he returned to the United States with a U.S. passport document, ICE issued another immigration detainer against Mr. Robles in August 2011, once again subjecting him to detention.[33] Only after a local immigration attorney protested Mr. Robles's detention by ICE did the agency release the immigration detainer on August 31, 2011.[34] ICE has yet to produce any record of this detainer, despite Plaintiff's written discovery requests that it be provided.

ARGUMENT

## I.    The United States Is Not Entitled To Summary Judgment On Liability.

The government seeks summary judgment as to liability on Mr. Robles's malicious prosecution claim because, it contends, his prior attorney's admission to the false allegations ICE lodged against him negates two essential elements of his claim: bona fide termination of the removal proceeding in his favor, and the absence of probable cause. The government is wrong. The United States admitted in its Answer that Mr. Robles obtained a bona fide termination in his favor. Consequently, the government's judicial admission conclusively establishes this element of Mr. Robles's claim. With respect to the probable cause element, the controlling precedent

---

[30] Ex. W, Robles Dep. 164:13-165:7.
[31] Rec. Doc. 1, ¶ 1; Rec. Doc. ¶ 2.
[32] Rec. Doc. 1, ¶ 70; Rec. Doc. 2, ¶ 70.
[33] Ex. X, Acuña Fact Dep. 85:22-87:8.
[34] Ex. X, 88.

cited by the United States also dictates that Mr. Robles is not bound by the admissions of his prior counsel as a result of the egregious circumstances in which she made them. Moreover, even if Mr. Robles were bound to the admissions of his counsel on December 16, 2008, the government is not entitled to summary judgment because it did not have probable cause to institute removal proceedings against Mr. Robles and detain him beginning on October 9, 2008.

A. The Government's Judicial Admission That Plaintiff Obtained A Bona Fide Termination Of The Removal Proceeding In His Favor Is Conclusive.

Because the United States admitted in its Answer that Mr. Robles obtained a bona fide termination of the removal proceeding in his favor, (Rec. Doc. 25, p. 7, ¶ 84), the government's assertion that Plaintiff cannot satisfy this element of his malicious prosecution claim fails as a matter of law. "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). Admissions in pleadings are "judicial admissions that are *conclusively* binding upon the party that made them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (emphasis in original) (quoting *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)). Judicial admissions constitute formal proof, and therefore possess the highest possible probative value because they are established beyond the need of evidence to prove them. *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941). Although a judicial admission is not itself evidence, it is a formal concession that has the effect of withdrawing the admitted fact from contention. *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). A party may not subsequently rebut a judicial admission made in its pleadings with new argument, evidence, or testimony. *Giddens v. Community Education Centers, Inc.*, 540 Fed. App'x 381, 390 n.3 (5th Cir. 2013) (citing *Davis*, 823 F.2d 107-08).

In this case, the United States made a binding judicial admission in its Answer that forecloses its newly discovered position that Mr. Robles "cannot satisfy the bona fide termination" element of his malicious prosecution claim, (Rec. Doc. 40-5, p. 8), and that "there was not a bona fide termination of Plaintiff's removal proceeding in his favor." (*Id.* at 11). Paragraph 84 of Plaintiff's Complaint reads: "On September 21, 2011, Immigration Judge Duck **effectuated a bona fide termination of the immigration removal proceeding in Plaintiff's favor** by reopening the proceeding, vacating the removal order, and terminating the proceedings on the ground that Plaintiff is a U.S. Citizen." (Rec. Doc. 1, p. 12 (emphasis added)). The government's Answer reads, simply: "**Admit**." (Rec. Doc. 25, p. 7 (emphasis added)). The United States thus made a binding judicial admission that Plaintiff obtained a bona fide termination in his favor. *Davis*, 823 F.2d at 108. Because the government's admission is conclusive, this element of Plaintiff's claim is no longer in contention. *Martinez*, 244 F.3d at 276.

Though a district court may, in its discretion, relieve a party of the adverse consequence of its judicial admission, *McGee v. O&M Boat Co.*, 412 F.2d 75, 76 (5th Cir. 1969), the United States has not asked for any such relief, and, it would be unwarranted here. The United States failed to disclose or acknowledge in its Motion and Memorandum that it previously admitted the bona fide termination element of Plaintiff's malicious prosecution claim. As a result, the government also failed to advance any plausible basis for excusing it from the adverse consequences of this judicial admission. Indeed, none exists. Moreover, excusing the government from its binding judicial admission now by allowing it to assert this defense for the first time in this litigation—less than two months before trial and after the close of discovery—

would significantly prejudice Mr. Robles by depriving him of the opportunity conduct discovery on this element of his claim.

B. <u>Nothing That Occurred During Mr. Robles's Final Removal Hearing Prevents Him From Proving ICE Lacked Probable Cause to Commence and Continue His Removal Proceeding.</u>

The United States asserts it is entitled to summary judgment because the actions of Mr. Robles's prior counsel during his final removal hearing prevent him from establishing that ICE initiated deportation proceedings against him without probable cause. (Rec. Doc. 40-5, p. 7-11). This assertion is incorrect for two reasons. First, the government's reliance on the fact that Mr. Robles's prior counsel admitted to ICE's false allegations is misplaced because Mr. Robles is not bound by those admissions as a matter of law. Second, as the government implicitly concedes by focusing its motion only on actions of Mr. Robles's prior counsel during the December 16, 2008 removal proceeding, whether ICE had probable cause to commence removal proceedings against Mr. Robles on October 9, 2008 is subject to a genuine dispute of material fact that precludes summary judgment. The government's attempt to bootstrap a demonstrably inaccurate admission by Plaintiff's prior attorney to ICE's false allegations cannot negate the probable cause element of Plaintiff's malicious prosecution claim as a matter of law because it does not address what ICE agents knew when they initiated removal proceedings against Mr. Robles over two months earlier.

1. ***Mr. Robles Is Not Bound By The Inaccurate Admissions Of His Prior Counsel.***

As a matter of law, Mr. Robles is not bound by the admissions of his prior counsel to the false allegations ICE leveled against him during his December 2008 removal hearings. The government correctly cites *Matter of Velasquez*, 19 I&N Dec. 377 (BIA 1986), as the controlling case for the proposition that individuals in removal proceedings are generally bound by the

admissions of their attorneys. (Rec. Doc. 40-5, p. 7). Yet the United States completely ignores the "egregious circumstances" *Velasquez* identifies as exceptions to this general rule. Specifically, a person in removal proceedings will not be bound by admissions of counsel where (a) the factual admissions and concessions were factually untrue or incorrect; (b) the admissions were the product of ineffective assistance of counsel; or (c) binding the client to the attorney's admissions would produce an unjust result. *Matter of Velasquez*, 19 I&N Dec. at 383. *See also Santos-Rodriguez v. Holder*, 657 F.3d 820, 831-32 (9th Cir. 2011) (discussing *Velasquez*'s three exceptions at length, but in a different order). Because all three egregious circumstances exist here, Ms. Calvo's admissions to ICE's false allegations do not bind Mr. Robles.

A person in removal proceedings is not bound by an attorney's admissions when "the factual admissions and concession of deportability were factually untrue or incorrect." *Matter of Velasquez*, 19 I&N Dec. at 383. Pursuant to this exception, an attorney's admission is not binding upon a client who "strongly denie[s]" the allegations in the government's charging document, particularly if the admission deprives the subject "of all possibility for relief from deportation." *Mai v. Gonzales*, 473 F.3d 162, 167 (5th Cir. 2006) (reversing the BIA's denial of a motion to reopen where the noncitizen's attorney admitted to the allegation that he made a false claim to U.S. citizenship notwithstanding the fact that the noncitizen strongly denied that allegation).

In this case, it is beyond dispute that Mr. Robles derived U.S. citizenship in 2002. (Rec. Doc. 1, ¶ 1; Rec. Doc. 25, ¶ 1). ICE's allegations in the Notice to Appear that he was a noncitizen subject to deportation were therefore factually untrue and incorrect. (Rec. Doc. 1, ¶¶ 47-48; Rec. Doc. 25, ¶¶ 47-48) (admitting "that the NTA mistakenly alleges that Plaintiff was not a United States citizen"). Mr. Robles strongly denied ICE's allegations that he was a

11

noncitizen subject to deportation. He gave and signed a sworn statement declaring under penalty of perjury that he was a U.S. citizen. Ex. G. Once in immigration court, he protested his U.S. citizenship so vocally that he was removed from the courtroom. Ex. W. Finally, the admissions of his prior counsel to ICE's false allegations deprived him of all possibility for immigration relief. Mr. Robles's case is thus a textbook example of an egregious circumstance identified in *Matter of Velasquez* that relieves him of responsibility for his counsel's inaccurate admissions.

Similarly, where an attorney's admissions are the result of "unreasonable professional judgment"—otherwise known as ineffective assistance of counsel—they will not bind the respondent in removal proceedings. *Matter of Velasquez*, 19 I&N Dec. at 383. *See also Zhong Qin Yang v. Holder*, 570 Fed. App'x 381, 383 (5th Cir. 2014) (analyzing the 'unreasonable professional judgment exception' as synonymous with ineffective assistance of counsel). Here, Mr. Robles's attorneys never spoke with him about his immigration case before or after his immigration court hearings. Ex. W. Based on his repeated assertions of U.S. citizenship to government officials, it is reasonable to assume that had his attorneys spoken with him, Mr. Robles would have again asserted his citizenship claim and expressed his desire to fight his case. As the government readily concedes, it is possible to conclude based on the record that "Plaintiff's attorneys at the removal hearings knew or should have known that he had a claim to United States citizenship and committed legal malpractice by not only failing to articulate the claim, but to the contrary, admitting that Plaintiff was not a citizen." (Rec. Doc. 40-5, p. 14). Accordingly, *Velasquez*'s unreasonable professional judgment exception applies, and Mr. Robles is not bound by Ms. Calvo's admissions to ICE's false allegations against him.

The third and final egregious circumstance under which a person in removal proceedings will not be bound by his or her counsel's admissions is when those admissions are so unfair that

they produce an unjust result. *Matter of Velasquez*, 19 I&N Dec. at 383. It is clearly established as a matter of constitutional law that ICE officers do not have the authority to detain or deport U.S. citizens. *Morales v. Chadbourne*, 996 F.Supp.2d 19, 29 (D.R.I. 2014) (quoting *Lyttle v. United States*, 867 F.Supp.2d 1256, 1281 (M.D. Ga. 2012). *See also Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) ("Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact.").[35] The United States has admitted Mr. Robles was a U.S. citizen, and had been one for more than six years, when it initiated removal proceedings against him. (Rec. Doc. 25, ¶ 1).[36] It has also admitted that the allegations in the Notice to Appear were incorrect and untrue. (Rec. Doc. 25, ¶¶ 47-48). And the government jointly agreed to reopen Mr. Robles's removal proceeding and vacate the deportation order precisely because he was U.S. citizen. (Rec. Doc. 1, ¶ 73, Rec. Doc. 25, ¶ 73).

The result of ICE's false allegations—and Ms. Calvo's admissions to them—was Mr. Robles's banishment from the United States.[37] As the Supreme Court has noted, removal from the United States "may result in the loss of all that makes life worth living." *Bridges v. Wixon*, 326 U.S. 135, 147 (1945) (quoting *Ng Fung Ho*, 259 U.S. at 284). Viewing the facts in a light

---

[35] Or, in the words of a Member of Congress who formerly chaired the House Judiciary Subcommittee on Immigration, "There's no jurisdiction for the government to arrest or detain, or let alone deport, citizens. That's otherwise known as kidnapping . . . ." Andrew Becker, *Observe and Deport*, Mother Jones (Apr. 23, 2009, 8:35 AM), http://www.motherjones.com/politics/2009/04/observe-and-deport (quoting Rep. Lofgren D-CA).

[36] Given this judicial admission, the government's factual assertion in its motion recent filing that Mr. Robles "had been granted United States citizenship earlier [in 2011]", (Rec. Doc. 40-5, p. 4), is likely a mere oversight on the part of the government's counsel, rather than an intentional retreat from the prior official position of the United States in Paragraph 1 of its Answer that Mr. Robles became a U.S. citizen in 2002.

[37] *See Lyttle,* 867 F.Supp.2d at 1266, n.1 ("Since 'deportation' contemplates the removal of a *non-citizen*, it may be more precise to describe [a U.S. citizen's] removal as 'banishment'[.]") (citing *Greene v. United States*, 154 F. 401, 416 (5th Cir. 1907)).

most favorable to Mr. Robles, banishment of a United States citizen who was so insistent in pressing his claims that he had to be removed from the courtroom during his final hearing was a manifestly unjust result. Consequently, Ms. Calvo's admissions fall within the third category of egregious circumstances identified in *Velasquez*, and Mr. Robles is not bound by these admissions.

### 2. *ICE Lacked Probable Cause to Initiate Removal Proceedings Against Mr. Robles on October 9, 2008.*

Even if the Court were to conclude that Mr. Robles is bound by his prior counsel's admissions during the December 16, 2008 removal hearing, the United States is not entitled to summary judgment because ICE lacked probable cause to commence removal proceedings against Mr. Robles on October 9, 2008. Under Louisiana law, the "crucial determination" is whether ICE agents had an honest and reasonable belief that Mr. Robles was a noncitizen at the time they commenced the civil removal proceeding against him. *See Jones v. Soileau*, 448 So.2d 1268, 1272 (La. 1984) ("The crucial determination is whether Soileau had an honest and reasonable belief in the guilt of Jones **at the time he pressed charges**.") (citing *Sandoz v. Veazie*, 30 So. 767 (1901)) (emphasis added). *See also Wiley v. Wiley*, 800 So.2d 1106, 1109 (La. App. 3d Cir. 2001) ("The Louisiana Supreme Court has instructed that probable cause is the "honest and reasonable belief in the guilt of the accused **at the time the charges were filed**. . . This standard requires the plaintiff to prove the reasonable state of mind of the defendant at the time the charges were filed.") (emphasis added). This state-law analysis is consistent with that undertaken by federal courts analyzing probable cause. *See, e.g.*, *Izen v. Catalina*, 393 F.3d 363, 368 (5th Cir. 2005) ("A court determines whether probable cause existed **as of the time the government instituted criminal proceedings**.") (emphasis added). The government's reliance on what transpired at the December 2008 immigration court hearing is thus misplaced. Instead,

the Court must look to what ICE officers knew at the time they initiated proceedings against Mr. Robles to determine whether probable cause existed at the time. *Jones*, 448 So.2d at 1272; *Wiley*, 800 So.2d at 1109.

Even if the Court were to consider the statements of Mr. Robles's prior counsel at the December 16, 2008 hearing as part of its probable cause analysis, viewing the evidence in a light most favorable to Mr. Robles, genuine issues of material fact exist regarding whether ICE had probable cause to believe he was a noncitizen when it issued the charging document against him on October 9, 2008. To satisfy the probable cause element of his malicious prosecution claim, Mr. Robles "must adduce sufficient evidence to demonstrate that, at the time the charges were initiated, the [ICE officers] lacked sufficient knowledge that would warrant a prudent person's belief that [he] had already committed or was committing a [violation]." *Collins v. Doyle*, No. 98-30663, 209 F.3d 719 at *6 (5th Cir. 2000) (unpublished table case) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)). This evidence must be "viewed in light of the observations, knowledge, and training of the law enforcement officers involved." *United States v. Muniz-Melchor*, 894 F.2d 430, 438 (5th Cir. 1990).

The probable cause standard "is not entirely toothless." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) *cert. denied* 488 U.S. 822 (1988). It requires "not merely a reasonable suspicion that [an offense] has been committed, but a reasonable basis under the circumstances for reaching that conclusion and for acting on it." *Bigford*, 834 F.2d at 1218. "As a corollary, moreover, of the rule that the police may rely on the totality of the facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Id. See also Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003). In other words, ICE officials "may not close [their] eyes to facts that would help clarify the circumstances of an

arrest." *Douglas v. United States*, 796 F.Supp.2d 1354, 1364 (M.D. Fla. 2011) (finding probable cause dissipated when a U.S. citizen detainee submitted a written claim to citizenship) (internal quotation omitted).

ICE officials lacked probable cause to believe Mr. Robles was a noncitizen illegally present in the United States when they arrested, detained, and initiated proceedings against him. *See* 8 U.S.C. § 1357(a)(2). While IEA Grice had the authority to question Mr. Robles about his citizenship and immigration status when he encountered him at the Lafourche Parish Detention Center, 8 U.S.C. § 1357(a)(1), he needed probable cause or consent in order to detain Mr. Robles. *See Lyttle*, 867 F.Supp.2d at 1280 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975)). Because IEA Grice conducted no questioning or investigation into Mr. Robles's citizenship status prior to arresting him without warrant, Ex. E, ICE's detention of Mr. Robles at Lafourche Parish Detention Center was unlawful. *Lyttle*, 867 F.Supp.2d at 1288. In addition, because there was no reason to believe Mr. Robles was likely to escape before IEA Grice could obtain a warrant, the warrantless arrest exceeded ICE's statutory authority. *See Arizona v. United States*, 132 S. Ct. 2492, 2506 (2012) (recognizing immigration officers' limited authority to make warrantless arrests "but only where an alien 'is likely to escape before a warrant can be obtained.'") (quoting 8 U.S.C. § 1357(a)(2)).

Even assuming Mr. Robles's foreign birth and criminal history arguably provided IEA Grice probable cause to make an arrest, probable cause to prosecute Mr. Robles dissipated entirely when he swore under oath that he was United States citizen. *Lyttle*, 867 F.Supp.2d at 1280 ("When an officer learns of information that suggests a detainee should not continue to be detained, particularly when evidence exists that the detainee is a U.S. Citizen, then that officer has a duty to make an independent assessment as to whether he has a reasonable suspicion that

the detainee is an alien.") (citing the Hayes Memo and *Brignoni-Ponce*, 422 U.S. at 881-82). *See also Douglas*, 796 F.Supp.2d at 1365-66.

Several of the official government documents IEA Grice created list Mr. Robles's citizenship as "United States" and his father's nationality as "United States." Yet no ICE official ever took the affirmative steps required by the Hayes Memo to investigate these claims. *Compare Lyttle,* 867 F. Supp. 2d at 1298 ("The Court rejects the United States' narrow characterization of the [Hayes] Memo's requirements as being limited to broad general suggestions regarding interrogation and investigative techniques. As previously explained, the Hayes Memo requires certain specific acts and reporting up the chain of command by ICE officers."). Viewing ICE agents' actions in light of the knowledge and training of the officers involved, *see Muniz-Melchor*, 894 F.2d at 438, the agents' failure to conduct the investigative steps set forth in the Hayes Memo demonstrates they disregarded facts tending to dissipate probable cause when they commenced the removal proceeding against Mr. Robles on October 9, 2008. *See Evett*, 330 F.3d at 688. Accordingly, Mr. Robles will be able to satisfy the probable cause element of his malicious prosecution claim, and the United States is not entitled to summary judgment on liability.

None of the purportedly analogous cases cited by the government—either in the criminal context or the civil context—dictates a contrary result. Under long-established Louisiana malicious prosecution law, events that unfold subsequent to the filing of a criminal charge are simply additional pieces of evidence that comprise the entirety of the circumstances the court must review. *Jones v. Soileau*, 448 So.2d 1268, 1272 (La. 1984). A previous conviction is therefore no more conclusive on the issue of probable cause than a subsequent reversal of the conviction. *Id.* Moreover, even when a criminal defendant enters a guilty plea, that plea will not

foreclose his subsequent malicious prosecution action if he can establish that the plea was not voluntarily and intelligently made, or was the product of ineffective assistance of counsel—both of which are factual issues that generally preclude summary judgment. *Unger v. Cohen*, 718 F.Supp. 185, 187 (S.D.N.Y. 1989).

Similarly, if a person offers a coerced or false confession after law enforcement officials ignore evidence tending to dissipate probable cause, the conviction obtained as a result of that confession will not necessarily shut the door on a malicious prosecution claim. *See, e.g.*, *Williams v. City of New York*, 508 F.2d 356, 360 (2d Cir. 1974). The United States and ICE are surely familiar with this situation in the immigration context, given that this is precisely what banished U.S. citizen Mark Lyttle alleged occurred prior the entry of his unlawful removal order (coincidentally) on December 9, 2008. *See Lyttle v. United States*, No. 4:10-cv-142-D, 2011 U.S. Dist. Lexis 156321 (E.D.N.C. Nov. 14, 2011) (recommending denial of the government's motion to dismiss Mr. Lyttle's claims and noting that he signed a sworn statement conceding he was a removable noncitizen and contesting his legal right to a removal hearing before an immigration judge).

The government's efforts to stretch the facts of Mr. Robles's removal hearing into a mutually agreed upon compromise and resolution fare no better in light of the record. First, there is the uncontroverted fact that Mr. Robles himself did not agree to any such deal. Ex. W. Second, there is the reality that he had to be removed from the courtroom and shushed by the immigration judge prior to the entry of his removal order. *Id.* Third, there is the stubborn fact that Mr. Robles and ICE followed none of the statutory and regulatory protocols for a stipulated removal order or anything else akin to a plea deal or civil settlement. *See* 8 U.S.C. § 1229a(d) (permitting the Attorney General to promulgate regulations governing stipulated removal orders); *see also* 8

C.F.R. § 1003.25(b) (setting forth the requirements for stipulated removal orders). Among the requirements of any stipulated removal order is a statement that the person being deported understands the consequences of the stipulated request and that he or she enters the request voluntarily, knowingly, and intelligently. 8 C.F.R. § 1003.25(b)(6). No such statement occurred here. The government's claim that what happened to Mr. Robles was the result of his voluntary compromise with ICE is thus factually and legally baseless.

**II.     The United States Is Not Entitled To Partial Summary Judgment Limiting Damages.**

Partial summary judgment cutting off Mr. Robles's damages on the date of his final immigration court hearing is inappropriate because genuine issues of disputed material fact exist regarding both comparative fault and causation.

A.     Because the United States Is An Intentional Tortfeasor, Louisiana's Comparative Fault Statute Precludes Partial Summary Judgment Limiting Plaintiff's Damages.

The United States is not entitled to partial summary judgment limiting Plaintiff's damages because a genuine dispute of material fact exists regarding whether Mr. Robles engaged in any intentional conduct that caused his damages, and thus, whether any reduction of his damages based on comparative fault is proper under Louisiana law. Though the United States dedicates considerable discussion to Louisiana Civil Code Article 2323—the comparative fault statute—it neglects to mention the statutory provision most relevant to Plaintiff's claim for damages based on the intentional tort of malicious prosecution. *See* DE 40-5 at 12-15. Paragraph C of Article 2323 reads: "Notwithstanding the provisions of [paragraphs] A and B, if any person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of **intentional tortfeasor**, **his claim for recovery of damages shall not be reduced**." LSA-C.C. art. 2323C (emphasis added).

"Significantly, Paragraph C added an exception to the general rule of comparative fault when an intentional tortfeasor was involved[.]" *McAvey v. Lee*, 58 F.Supp.2d 724, 727 (E.D. La. 1998). This exception "reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor." *Landry v. Bellanger*, 851 So.2d 943, 954 (La. 2003). Pursuant to this legislative judgment, plaintiffs damaged by intentional tortfeasors are generally immune from a reduction in damages owing to their own comparative fault. *See Landry*, 851 So.2d at 954-55. Only when an injured plaintiff engages in intentional—as opposed to merely negligent—conduct that contributed to his or her damages will Louisiana courts allow a reduction due to comparative fault. *See, e.g.*, *Clark v. Burchard*, 802 So.2d 824, 834 (La. App. 4th Cir. 2001) (holding Article 2323C "does not apply where the plaintiff's fault is intentional in nature " and allowing reduction of damages for a plaintiff who engaged in a fight in a restaurant).

In this case, Louisiana's comparative fault statute does not permit any reduction in the malicious prosecution damages Mr. Robles seeks unless he engaged in intentional, culpable conduct. LSA-C.C. 2323C. *Clark*, 802 So.2d at 834. The government makes no claim that Mr. Robles engaged in intentional, culpable conduct. (Rec. Doc. 40-5 at 12-15). Rather, the United States admits that "there are a number of possible explanations" for why Plaintiff's claim to U.S. citizenship was not memorialized on the record during his two immigration court hearings. (*Id.* at 13-14). Effectively conceding that the undisputed facts it identified do not establish Plaintiff's intentional, culpable conduct as a matter of law, the government instead contends it does not matter *why* Mr. Robles failed to articulate an on-the-record claim to U.S. citizenship. (*Id.* at 14). This contention is incorrect.

To reduce the damages it owes Mr. Robles on the basis of comparative fault, the Court must find that Mr. Robles himself engaged in intentional, culpable conduct rising above mere negligence. LSA-C.C. 2323C. The United States fails to point to any facts that would support such a conclusion as a matter of law. Accordingly, its motion for partial summary judgment that Mr. Robles's damages should be limited on the basis of comparative fault must be denied.

B.   The Government Is Not Entitled To Partial Summary Judgment That A Superseding Intervening Cause Cuts Off Mr. Robles's Damages On December 16, 2008.

No superseding intervening cause exists to relieve the United States of its responsibility for damages Mr. Robles suffered on and after December 16, 2008. First, it is important to note that the government does not contend ICE's actions were not the cause-in-fact of Mr. Robles's damages. (Rec. Doc. 40-5, p. 12-15). Nor could it. But for the government's wrongful institution of removal proceedings by filing a charging document that contained false allegations against Mr. Robles in the immigration court, he would not have had an immigration lawyer who admitted to those false allegations. Accordingly, ICE's actions were the cause-in-fact of Mr. Robles's removal from the United States, and the damages he suffered as a result. *See Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1991).

Rather, the United States suggests that Mr. Robles's actions and those of his prior counsel prevent him from demonstrating that ICE officials' malicious prosecution was the legal, or proximate cause of his damages. Specifically, the government claims Mr. Robles and his counsel took actions amounting to a superseding intervening cause that cuts off damages. Rec. Doc. 40-5 at 12-13. This claim fails as a matter of law.

"An intervening cause is one that comes into play **after** the defendant's negligent conduct has ceased, but before the plaintiff suffers injury." *Adams v. Rhodia, Inc.*, 983 So.2d 798, 808 (La. 2008) (citing Restatement (Second) of Torts § 440 (1965)) (emphasis added). An intentional

tortfeasor "will not be relieved of the consequences of his or her negligence unless the intervening cause superceded [sic] the original negligence and alone produced the injury." *Id.* Where the injury from an intervening cause is foreseeable, the original tortfeasor "will be liable notwithstanding the intervening cause." *Id.* This is because foreseeable intervening forces are within the scope of the risk, and hence, they are the responsibility of the original tortfeasor. *Id.* citing Prosser and Keeton, Law of Torts (4th ed. 1971) at 273-74, 288. *See also Johnson v. Morehouse General Hospital*, 63 So.3d 87 (La. 2011).

As threshold matter, some Louisiana authority suggests that United States—not Mr. Robles—bears the burden of proving that a superseding intervening cause exists. *See, e.g., Turner v. Nationwide Ins. Co.*, 503 So.2d 734, 737 (La. App. 3d Cir. 1987) ("The burden of proving a superseding intervening cause rests with the defendants."); *Lancon v. State Farm Mutual Insurance Co.*, 645 So.2d 692 (La. App. 3d Cir. 1994) ("The defendants bear the burden of proving that the July 29 accident aggravated Mrs. Lancon's preexisting condition."). *Cf. Guillie v. Comprehensive Addiction Programs, Inc.*, 735 So.2d 775, 778 (La. App. 4th Cir. 1999) (collecting cases from the First and Fourth Circuit courts of appeal standing for the proposition that "it is the plaintiff's burden to establish that he injuries sustained were not the result of the intervening act."). Even assuming Plaintiff bears the burden of demonstrating no superseding intervening cause exists, the government is not entitled to summary judgment.

ICE's continuation of the removal proceeding against Mr. Robles up to and including his December 16, 2008 removal hearing means that the agency's tortious conduct never ceased prior to the occurrence of the event the government claims was an independent, superseding cause. *Adams*, 983 So.2d at 808. Mr. Robles's prior counsel only admitted to ICE's false allegations that he was not a U.S. citizen because ICE presented them to the Court and pursued a removal

order against him. As a result, the responses of Mr. Robles's prior counsel were not independent of ICE's tortious actions, nor did these responses "alone produce[] the injury." *Id.*

Moreover, it was reasonably foreseeable to ICE that a person against whom it initiated removal proceedings might ultimately be unsure of his or her own status, thus risking the possibility that the subject would admit the government's false allegations. As ICE put it: "DRO officers are likely to encounter individuals who either assert claims to U.S. citizenship **or are unsure of their citizenship**. It is imperative that DRO officers establish probable cause to believe that an individual is an alien before making an arrest for a charge of removability." Ex. O, Hayes Memo (emphasis added). Consequently, the fact that Mr. Robles's counsel and the immigration court rubber-stamped ICE's false allegations was foreseeable, and it is therefore not a superseding intervening cause of the damages he suffered after the unlawful entry of his removal order.

Finally, as a factual matter, the government's suggestion that Mr. Robles should be treated as a superseding intervening cause of his own banishment because "was afforded due process and had his 'day in court'" (Rec. Doc. 40-5 at 14), withers under the harsh light of the record in this case. The concepts of due process and having one's day in court are antithetical to what happened to Mr. Robles on December 16, 2008. Namely, an ICE prosecutor appeared before an immigration judge and sought a deportation order against a U.S. citizen. The subject of the prosecution swore under oath before ICE officials that he was a U.S. citizen. Ex. G ICE created no less than three separate official documents listing his official country of citizenship as the "United States." Exs. I-N. When the subject had the temerity to speak up and assert his U.S. citizenship in open court, he was silenced. Ex. W. When he refused to be silenced, he was thrown out of the courtroom. Ex. W. And when he was finally allowed to return, with entry of

his removal order having become a *fait accompli*, the immigration judge, in full view of the ICE prosecutor, conducted a one-minute on-the-record exercise to make it appear as though the attorney who was telling the court exactly the opposite of what her client said fairly represented the U.S. citizen's interests. Ex. W.

Viewing the record in a light most favorable to the Plaintiff, this is what happened to Mr. Robles on December 16, 2008. These facts preclude judgment in favor the United States that Mr. Robles or his prior counsel were, as a matter of law, a superseding intervening cause of the damages he suffered after a deportation order was unlawfully entered against him. Instead, they clearly demonstrate that ICE's continuation of the removal proceeding against Mr. Robles was the legal cause of his removal order and the damages he suffered after being banished to Mexico. The government's attempt to limit its own liability by blaming the victim accordingly must fail, and the motion should be denied.

## CONCLUSION

Based on the foregoing, the United States of America's Motion for Summary Judgment should be DENIED in its entirety.

Date:   April 14, 2015                            Respectfully submitted,

                                                 /s/ R. Andrew Free
                                                 **JERRY A. MARTIN (TBN 20193)***
                                                 **R. ANDREW FREE (TBN 30513)***
                                                 BARRETT, JOHNSTON, MARTIN & GARRISON, LLC
                                                 Bank of America Plaza
                                                 414 Union Street, Suite 900
                                                 Nashville, TN 37219
                                                 Telephone: (615) 244-2202
                                                 Facsimile (615) 244-4345
                                                 Email: Afree@BarrettJohnston.com
                                                 *Admitted Pro Hac Vice*

                                                 **DONALD J. CAZAYOUX, JR. (LBN 20742)**

24

**J. LANE EWING, JR. (LBN 29854)**
Cazayoux Ewing, LLC
257 Maximilian Street
Baton Rouge, LA 70802
Telephone: (225) 650-7400
Facsimile: (225) 650-7401
E-mail: don@cazayouxewing.com
E-mail: lane@cazayouxewing.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing *Plaintiff's Response in Opposition to Motion for Summary Judgment* was filed electronically with the Clerk of Court using the CM/ECF system that will send notice to all counsel of record.

Date: April 14, 2015                    By:

                                        /s/ R. Andrew Free
                                        R. Andrew Free (TBN 30513)